The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on August 24, 2015, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: August 24, 2015**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 09-10264 |
| | ) | |
| LEO V. MYERS, SR., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |
| | ) | |

ORDER DENYING PETITIONS FOR RELEASE OF
UNCLAIMED FUNDS WITHOUT PREJUDICE[1]

Before the Court are petitions for release of unclaimed funds filed by the purported heirs of Ernest L. Carlton (hereinafter "petitioners"). (Doc.'s 110, 112, and124, Exhibits J, K, and L). The funds at issue stem from the sale of real property located in Ontario, Canada, owned jointly at one time by the debtor and three other individuals, including Ernest L. Carlton. Because the petitioners have not met their burden of showing that they are presently the true owners of the

---

[1]This order is not intended for official publication.

funds sought, the petitions are denied without prejudice.

JURISDICTION

A petition for release of unclaimed funds is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A). This Court has jurisdiction over core proceedings under 28 U.S.C. §§ 157(a) and 1334 and Local General Order 2012-7, entered on April 4, 2012, by the United States District Court for the Northern District of Ohio.

FACTUAL AND PROCEDURAL HISTORY

Pursuant to an adversary proceeding and actions in the bankruptcy case itself, the Court authorized the bankruptcy trustee to sell real property known as Island Number Nine in Lake Nippissing, Ontario, Canada. (Doc. 50, Adversary Proceeding No. 09-1324). It appears that at the time the property was sold in 2010, title was in the name of the debtor, Leo V. Myers, and three nondebtor co-owners: Ernest L. Carlton, David O. Riley, and Charles W. Vance. Twenty-five percent (25%) of the net proceeds of the sale were made available to the creditors of the debtor. The Court authorized the trustee to pay the remaining seventy-five percent (75%) of the net proceeds ($69,331.30) into the Federal Registry for the benefit of the nondebtor co-owners (Doc. 81). The Court ordered "any person seeking to assert an interest in the proceeds through the estates of

2

Charles W. Vance, David O. Riley, or Ernest L. Carlton" to file a petition for unclaimed funds. (Doc. 50, Adversary Proceeding No. 09-01324).

On April 16, 2012, Vickie Carlton Sadler and Thaddeus A. Carlton filed petitions for release of unclaimed funds, each claiming entitlement to a portion of the funds in the amount of $23,110.43. (Doc.'s 110 and 112). In response to these requests and several others, the Court issued an interim order specifying that petitioners for unclaimed funds "must demonstrate: (1) that they were a co-owner of the Ontario property with the Debtor or (2) that they are legally entitled to the full or partial interest of a co-owner, *e.g.*, through inheritance and appropriate orders of a probate court." (Doc. 114). In response, petitioners wrote a letter to the Court asserting an interest in these proceeds through the estate of their father, Ernest L. Carlton–who apparently died intestate in1997 in Alabama–and indicating their desire to provide the Court with sufficient documentation to claim the funds without administering their father's estate through probate. (Doc. 116). A hearing was held on August 28, 2012, at which Vickie Carlton Sadler and Thaddeus A. Carlton appeared telephonically. At this hearing, the Court indicated that it could release the funds only if it were provided information that would be sufficient for an Alabama probate court to determine the rightful claimants of Ernest Carlton's estate. In the meantime, June M. Beerman, formerly known as

June M. Vance, filed a petition for release of unclaimed funds along with, among other things, a copy of Charles W. Vance's will, properly submitted to probate in the State of Ohio, naming "June M. Vance" as sole devise and executrix. (Doc. 117 and 118). The Court disbursed Charles W. Vance's $23,110.43 share of the unclaimed funds to June Beerman on September 19, 2012.

On August 5, 2015, petitioners filed a response to the interim order regarding requests for unclaimed funds along with copies of the following documentation: (1) Ernest L. Carlton's Alabama certificate of death; (2) the Parcel Register from the Land Registry Office in Ontario listing "Ernest L. Carlton" as a co-owner of the property at the time of the 2010 sale; (3) Sylena N. Carlton's Ohio certificate of death listing "Ernest Carlton" as the surviving spouse; (4) affidavits of Bernard Thornton and Beatrice Mosley; (5) a Department for the Army Statement of Casualty for PFC Lavalle Ernest Carlton; (6) birth certificates for Crystal Michele Carlton, Michael C. Carlton, Omar Shuntell Carlton, and Natrell Ja-on Wray; and (7) petitions for unclaimed funds and supporting documentation for Crystal M. Carlton, Natrell Wray, and Omar S. Carlton (Doc. 124).

## DISCUSSION

When unclaimed funds are deposited into the Federal Registry, "[a]ny claimant entitled to such money may, on petition to the court and upon notice to

4

the United States Attorney and full proof of the right thereto, obtain an order directing payment to him." 28 U.S.C. § 2041.  In reviewing such petitions, the bankruptcy court has a duty to ensure that unclaimed funds are disbursed to their true owner.  *See In re Rush Hampton Industries, Inc.*, 379 B.R. 192, 193 (Bankr. M.D. Fla. 2007); *In re Bradford Production, Inc.*, 375 B.R. 356 (Bankr. E.D. Mich. 2007) (quoting *In re Applications for Unclaimed Funds*, 341 B.R. 65, 69 (Bankr. N.D. Ga. 2005)).  Because petitions for unclaimed funds are typically considered *ex parte*, the Court must insist on "exact compliance with legal requirements[.]"  *In re Applications for Unclaimed Funds*, 341 B.R. at 69. Petitioners carry the burden of proving that they are presently entitled to the unclaimed funds sought.  *In re Linda Lee Rodriguez*, 488 B.R. 675, 678 (Bankr. E.D. Cal. 2013).

In addition to satisfying the requirements of Local Bankruptcy Rule 3011-1, petitioners must demonstrate that they are legally entitled to the full or partial interest of a co-owner.  Bankruptcy courts generally look to state law to determine property rights.  *See In re Rodriguez*, 488 B.R. at 678.  Since this case deals with succession rights in an intestate decedent's property, the provisions of the Alabama Code dealing with intestacy govern.

Under Alabama law, in the absence of a will, legal title to decedent's real

5

property vests *eo instante* in the decedent's heirs. *See Pennington v. Bigham*, 512 So.2d 1344, 1345 (Ala. 1987); Ala. Code 1975 § 43-2-830(a). "However, vesting alone is not the end of the inquiry and the vesting of a decedent's property does not mean the heir can immediately obtain possession of the property." *In re Rogriduez*, 488 B.R. at 679. In Alabama, title to real property vests subject to the statutory power of the administrator to take possession of it and obtain an order to have it sold for payment of the debts of the decedent's estate. *Pennington*, 512 So.2d at 1345-46; Ala. Code 1975 §§ 43-2-830(c), 43-2-370, and 43-2-442.

The procedures for administering an intestate estate in Alabama contain a number of fiduciary and notice protections for those with claims against the estate. The Alabama Code provides for an intestate estate to be administered by a personal representative appointed by the Probate Court. Ala. Code 1975 §§ 43-2-40 and 43-2-831. This personal representative is under a statutory duty to settle and distribute the estate of the decedent in accordance with the law as well as the rights of any claimants. Ala. Code 1975 § 43-2-833. The personal representative must furnish a bond payable to the judge of probate and is liable to interested persons for damage or loss resulting from any breach of their fiduciary duty. Ala. Code 1975 §§ 43-2-851 and 43-2-840. The Alabama Code further protects creditors of the intestate estate by requiring the personal representative to
6

give notice of the appointment to all persons having claims against the estate that are known or reasonably ascertainable within six months from appointment as well as through publication. Ala. Code 1975 §§ 43-2-60 and 43-2-61. The Court's review of Alabama law has not revealed any other state procedure through which intestate heirs would be entitled to receive property of the decedent. *Cf. In re Rodriguez*, 488 B.R. at 679 (suggesting that petitioner could prove right to unclaimed funds through affidavits establishing the requirements under California Probate Code §§ 13100 to 13104 inclusive).

Petitioners have not met their burden of showing that they are presently the true owners of the funds sought. Although the Court has no reason to doubt petitioners' claims as potential intestate heirs of Ernest L. Carlton's estate, that does not end the inquiry. Any rights Ernest L. Carlton's heirs have in the property are subject to an administrator's: (1) duty to ascertain the debts and proper distribution of the estate; and (2) power to take possession of estate property and obtain an order to have it sold to effect the proper distribution. *In re Rodriguez*, 488 B.R. at 678 (citing *Butner v. United States*, 440 U.S. 48, 54-55 (1979)) ("The bankruptcy court generally looks to state law to determine property rights."); *Pennington*, 512 So.2d at 1345-46.

Furthermore, the Court does not believe that it has subject matter

7

jurisdiction to stand in the shoes of an Alabama probate court and essentially determine the respective shares of all potential heirs to the estate of Ernest L. Carlton. 28 U.S.C. § 1334(b) provides that:

> [T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Pursuant to 28 U.S.C. § 157(a) and Local General Order 2012-7, entered by the United States District Court for the Northern District of Ohio, the district court has referred to the bankruptcy judges of the district "any and all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11." To determine "whether a particular matter falls within bankruptcy jurisdiction . . . it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *In re Wolverine Radio*, 930 F.2d 1132, 1141 (6th Cir. 1991). "A matter is related to a bankruptcy case if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Sanders Confectionary Products, Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 482-83 (6th Cir. 1992) (quoting *In re Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984) (emphasis omitted)). "The matter need not directly involve the debtor, as long as it 'could alter the debtor's rights [or] liabilities,' but an 'extremely tenuous connection' will not suffice." *Id.* (quoting

*In re Wolverine Radio*, 930 F.2d at 1142). Determining Ernest L. Carlton's intestate heirs, their relative shares, and the existence and validity of any claims will not alter the debtor's rights or liabilities. The debtor's case was closed on February 28, 2011, and the debtor's share of the funds that resulted from the sale of the property has already been distributed to creditors of the debtor's estate. Given the Court's lack of subject matter jurisdiction under 28 U.S.C. § 1334, the Court need not determine whether the petitioners' request to determine the heirs of Ernest Carlton's estate falls within the probate exception to federal court jurisdiction. *Compare Marshall v. Marshall*, 547 U.S. 293, 311 (2006) ("[T]he probate exception reserves to state probate courts the . . . administration of a decedent's estate[.]"), *with id.* at 317 (Stevens, J., concurring in part and concurring in the judgment) ("But careful examination reveals that at least most of the limitations so recognized stem not from some *sui generis* [probate] exception, but from generally applicable jurisdictional rules.").

Additionally, the Court is hesitant to release the unclaimed funds absent the fiduciary and notice protections afforded potential claimants of Ernest L. Carlton's estate under Alabama law. The Court appreciates the time and expense entailed in administering a probate estate as well as the petitioners' own efforts to provide this Court with detailed information about the likely heirs of Ernest L. Carlton's

9

estate; however, the Court must insist on compliance with state probate procedures to ensure that the funds are distributed to the proper parties. Petitioners' reliance on Ala. Code § 35-4-70 is not helpful. Even if petitioners could establish that they have claims as intestate heirs under that provision, the rights of other potential claimants must still be protected through Alabama probate law. Upon proof of a certified copy of an Alabama letter of administration, the Court stands ready to release $23,110.43 in unclaimed funds to the named personal representative of Ernest L. Carlton's estate for administration in compliance with Alabama law. *See* Ala. Code 1975 §§ 43-2-41 and 43-2-839.

## CONCLUSION

Because petitioners have not made the showing required to prove that they are presently the true owners of the funds sought, the petitions for release of unclaimed funds are denied without prejudice.

IT IS SO ORDERED.